UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTIRCT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re:<br><br>Valeria V. Gunkova,<br><br>Debtor. | Bankr. Case No. 23-11261-BFK<br><br>Chapter 7 |
| Gerard R. Vetter,<br>Acting United States Trustee for Region 4,<br><br>Plaintiff,<br><br>v.<br><br>Valeria V. Gunkova,<br><br>Defendant. | Adversary Proc. No. _____ |

**COMPLAINT OBJECTING TO DISCHARGE**

Gerard R. Vetter, Acting United States Trustee for Region 4, by and through his undersigned counsel, hereby files this complaint under 11 U.S.C. § 727(a) seeking the denial of the Debtors' discharge. In support thereof, the United States Trustee alleges the following:

Jack I. Frankel
Trial Attorney, Office of the U.S. Trustee
1725 Duke Street, Suite 650
Alexandria, VA 22314
(703) 557-7229
jack.i.frankel@usdoj.gov

**Parties**

1. Plaintiff, Gerard R. Vetter, is the Acting United States Trustee for Region 4, with a business address in care of the Office of the United States Trustee, 1725 Duke St., Suite 650, Alexandria, Virginia 22314.

2. Defendant, Valeria V. Gunkova ("Ms. Gunkova" or "the Debtor" or "the Defendant"), is an individual and may be served with a summons at her address of record 20701 Riptide Square, Sterling, VA 20165. The Defendant is represented by counsel Nancy Greene in the underlying bankruptcy case.

3. Donald King serves as the duly appointed Chapter 7 Trustee (the "Chapter 7 Trustee").

**Jurisdiction and Venue**

4. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(a), 28 U.S.C. § 157 and 11 U.S.C. § 727(a). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (J), and (O). Venue is proper in this Court. 28 U.S.C. § 1409 (a).

5. Plaintiff has standing to seek denial of Debtor's discharge in this case. 11 U.S.C. §§ 307 and 727(c).

6. This Complaint is timely filed pursuant to Fed. R. Bankr. P. 4004, the Plaintiff having obtained an order of this Court extending the time in which he may object to the Defendant's discharge through November 25, 2024.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

**The Commencement of the Case**

7. On August 3, 2023, the Debtor initially filed this case under chapter 11 subchapter V of the Bankruptcy Code. Docket No. 1.

8.    Along with the voluntary petition, the Debtor filed the required Schedules, Statements, and Lists ("Initial Schedules"). Docket No. 1.

9.    Since the beginning of the Debtor's bankruptcy, she has filed amended schedules four times. *See* Docket No. 135; Docket No. 142; Docket No. 269; Docket 274.

**Related Bankruptcy Filings**

10.   In addition to her personal bankruptcy case, Ms. Gunkova has filed several recent bankruptcy cases for companies that the Debtor has connections to. The cases are as follows:

Sterling Investment, LLC, 23-11203-KHK -- chapter 7 filed on July 26, 2023 ("Sterling Investment"); Debtor is 100% owner.

VNJ Management LLC, 23-11204-BFK -- chapter 7 filed on July 26, 2023 ("VNJ"); Debtor is 100% owner.

Skin Logic, LLC, 23-11352-KHK -- chapter 11 subchapter V filed on August 24, 2023 ("Skin Logic"); Debtor is 100% owner.

**Debtor's Initial Schedules and SOFA**

11.   On the Debtor's initial petition, the Debtor stated that she lives at 20701 Riptide Sq., Sterling, VA 20165. *See* Docket No. 1 at 2.

12.   The Debtor's initial Schedule A/B lists the property at 20701 Riptide Sq. as owned in fee simple by the Debtor. *See id*. at 15.[1]

13.   The Debtor's initial Schedule I lists her gross wages, salary, and commissions from Skin Logic as $5,832. *See id*. at 32. In Line 8h, the Debtor lists $0.00 of "other monthly income". *Id*. at 33.

---

[1] The Debtor's October 31, 2023 amended petition and schedules ("First Amended Petition") omit the ownership of this property. *See* Docket No. 135 at pg. 17 (indicating that the Debtor did not own or have any legal or equitable interest in any residence, building, land, or similar property).

14. On question 7 of the Debtor's initial Statement of Financial Affairs ("Initial SOFA"), the Debtor answered "No" to the question "Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?" *See id*. at 38.

15. On question 8 of the Debtor's Initial SOFA, the Debtor answered "No" to the question "Within 1 year before you file for bankruptcy, did you make any payments or transfer any property on account of a debt that benefitted an insider". *Id*.

16. On question 13 of the Initial SOFA, the Debtor answered "No" to the question "Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?" See *id*. at 39.

17. The Debtor signed the initial schedules and declared, under penalty of perjury, that she had read the summary and schedules, and that they are true and correct. *See id*. at 36.

**Debtor's Amendments to Petition and Schedules**

18. The Debtor has filed revised petitions and schedules four times since the commencement of her bankruptcy case.

19. First, the Debtor filed an amended petition and schedules ("First Amended Petition and Schedules") on October 31, 2023. *See* Docket No. 135. Notably, this version of the petition and schedules did not list the Debtor's residence on Schedule A/B question 1. *See id*. at 17. In Schedule I, the Debtor reported her as $4,714.90, with the total amount attributed to her monthly gross wages, salary, and combined monthly income in Line 12 commissions after payroll deductions. *Id*. at 36. In Line 8H, the debtor reported $0 in other monthly income. *Id*.

20. Second, the Debtor filed additional amended schedules ("Second Amended Schedules") on November 7, 2023. *See* Docket No. 142. The Second Amended Schedules also failed to list the Debtor's residence on Schedule A/B. *See id*. at 2. In Schedule I, the Debtor

reported her combined monthly income in Line 12 as $6,464.90, reporting $4,714.90 in Line 7 from monthly take home pay and an additional $1,750 from family support in Line 8C. *Id*. at 8. In Line 8H, the debtor reported $0 in other monthly income. *Id*. The Debtor signed the Second Amended Schedules and declared, under penalty of perjury, that she had read the summary and schedules, and that they are true and correct. *Id*. at 14.

21. Third, the Debtor filed the "Third Amended Petition and Schedules" on September 24, 2024. *See* Docket No. 269. The Third Amended Petition and Schedules correct the omission of the Debtor's residence on Schedule A/B, *see id*. at pg. 9. In Schedule I, the Debtor reported her combined monthly income in Line 12 as $7,343.30, with $5,328.30 attributed to monthly take home pay plus an additional $2,015.00 reported in Line 8C as family support. *See id*. at 36. In Line 8H, the debtor reported $0 in other monthly income. *Id*. The Debtor signed the Third Amended Petition and Schedules and declared, under penalty of perjury, that she had read the summary and schedules, and that they are true and correct. *Id*. at 51.

22. The most recent version of the petition and schedules ("Fourth Amended Petition and Schedules") were filed on September 25, 2024.[2] *See* Docket No. 274. In Schedule I, the Debtor reported her combined monthly income in Line 12 as $7,343.30, with $5,328.30 attributed to monthly take home pay plus an additional $2,015.00 reported in Line 8C as family support. *Id*. at 23. In Line 8H, the debtor reported $0 in other monthly income. *Id*. The Debtor signed the Fourth Amended Petition and Schedules and declared, under penalty of perjury, that she had read the summary and schedules, and that they are true and correct. *Id*. at 40.

---

[2] At the October 9, 2024 341 meeting, Debtor's counsel, Ms. Greene, stated that the Fourth Amended Petition and Schedules were filed solely to address a deficiency caused by signatures that loaded improperly on the Third Amended Petition and Schedules.

**Initial 341 Meeting**

23.     On October 11, 2023, the Chapter 11 Trustee conducted the first meeting of creditors in this case ("Initial 341"), whereat the Debtor was placed under oath.

24.     At the Initial 341, the Debtor testified that, although the payroll for Skin Logic showed that she was being paid $3,100 per month from the business, she did not deposit her checks and therefore was not being paid that sum by the business. *See* Transcript of Initial Gunkova 341 at 33-34.

```
 8          MR. FREEMAN:  All right.  And I'm referencing prior
 9   testimony from your Skin Logic case, but is it correct to say
10   that prior to the filing of the bankruptcy, your payroll
11   reflected 3,100 dollars a month, but that money was not paid to
12   you, correct?
13          MS. GUNKOVA:  Before bankruptcy?  Yes.
14          MR. FREEMAN:  Before bankruptcy?
15          MS. GUNKOVA:  Yes.
16          MR. FREEMAN:  So before bankruptcy --
17          MS. GUNKOVA:  I never --
18          MR. FREEMAN:  -- you weren't getting paid --
19          MS. GUNKOVA:  I never --
20          MR. FREEMAN:  -- the 3,100 a month?
21          MS. GUNKOVA:  -- deposit any checks, so I shreds my
22   checks.
```

```
 3          MR. FREEMAN:  And then, but you weren't actually
 4   depositing money and weren't paid any money?
 5          MS. GUNKOVA:  I -- no.  And Skin Logic paid for my
 6   mortgage and car.
```

```
15          MR. FREEMAN:   Okay.  So the number you were reporting
16   here was 67,068.  That's what you put in your tax returns.
17   That was what Skin Logic put on record that they paid you, but
18   that wasn't actually what you were paid, correct?
19          MS. GUNKOVA:   Yes.
```

25.     The Debtor testified that she estimated the figure listed in Schedule I based off of commissions alone. *Id*. at 32.

```
20          MR. FREEMAN:   -- correct?  You can go to page 37 for
21   me.  On the bottom right under the question 4, this is the
22   statement of financial affairs, where did you come up with the
23   number of 37,908?
24          MS. GUNKOVA:   Based off commissions, how I make
25   bonuses in tips.
```

```
                                                              33
1           MR. FREEMAN:   Is that number -- do you have that from
2    an accounting system, or is that just an estimate based on the
3    5,832 number from Schedule I?
4           MS. GUNKOVA:   I am not sure.
```

26.     The Debtor also testified that she received various sources of support from Skin Logic besides the figure listed in Schedule I. Specifically, the Debtor testified that Skin Logic pays for her mortgage, car, and other personal expenses. *See id.* at 34.

```
 5          MS. GUNKOVA:   I -- no.  And Skin Logic paid for my
 6   mortgage and car.
 7          MR. FREEMAN:   Yeah.  So it's Skin Logic pay for your
 8   mortgage --
 9          MS. GUNKOVA:   Yes.
10          MR. FREEMAN:   -- for your car --
11          MS. GUNKOVA:   Yes.
12          MR. FREEMAN:   -- for all your personal expenses?
13          MS. GUNKOVA:   It's (indiscernible) and I supposed
14   to -- yeah.
15          MR. FREEMAN:   Okay.  So the number you were reporting
16   here was 67,068.  That's what you put in your tax returns.
17   That was what Skin Logic put on record that they paid you, but
18   that wasn't actually what you were paid, correct?
19          MS. GUNKOVA:   Yes.
```

27.     The Debtor also admitted that $3,300 was transferred from Skin Logic bank accounts into the Debtor's personal bank account between July and August 2022. *See id*. at 43-44.[3]

---

[3] The U.S. Trustee contends, upon information and belief, that the true amount of money that the Debtor received from the Skin Logic business is much greater than $3,300.

```
18        MR. FREEMAN:  And above that line, there are transfers
19   into your account from 6848 for 2,300 and 1,000 dollars.  Do
20   you recall what account that is?
21        MS. GREENE:    Here.
22        MR. FREEMAN:   I'm on the -- right above there.
23        MS. GREENE:    Right above it.
24        MS. GUNKOVA:   Um-hum.
25        MR. FREEMAN:   No, up a little more.
                          eScribers, LLC
```

```
                                                                    44
1         MS. GREENE:    6848.
2         MR. FREEMAN:   Right there.
3         MS. GUNKOVA:   6848?
4         MS. GREENE:    No, up here.  6848.
5         MS. GUNKOVA:   Oh.  Oh, this looks like Skin Logic
6    account.
7         MR. FREEMAN:   All right.  So those would've been
8    transfers from Skin Logic's account into your personal bank
9    account?
10        MS. GUNKOVA:   Possible.
```

28. Further, the Debtor stated that she was giving money to her romantic partner of ten years, Jacob Bogatin ("Mr. Bogatin"), almost every month in the two years prior to her bankruptcy.[4] *Id*. at 35.

---

[4] Mr. Bogatin waived discharge in his own chapter 7 bankruptcy case in the Eastern District of Virginia. *See* Bankruptcy Case No. 23-11157, Docket No. 78.

```
 6              MR. FREEMAN:  Okay.  And on question 13, on page 39,
 7     within two years, did you give any gifts with a value of more
 8     than 600 dollars per person?
 9              MS. GUNKOVA:  Possible.
10              MR. FREEMAN:  Okay.  When you say "possible", were you
11     giving money to Mr. Bogatin --
12              MS. GUNKOVA:  Yes.
13              MR. FREEMAN:  -- every month?
14              MS. GUNKOVA:  Yes.
15              MR. FREEMAN:  All right.
16              MS. GUNKOVA:  Not every month.  Sometimes.
17              MR. FREEMAN:  Was it almost every month?
18              MS. GUNKOVA:  Sometimes.
```

29.     In addition to giving gifts to Mr. Bogatin in the form of money transfers to his accounts, the Debtor also testified that she made payments on Mr. Bogatin's behalf. *Id.* at 36.

```
 3              MR. FREEMAN:  Do you recall how many months you gave
 4     him money?
 5              MS. GUNKOVA:  Oh.  I -- I didn't give him physically.
 6     I just paid some expenses.
 7              MR. FREEMAN:  Well, when I say gave him money, I mean
 8     you transferred money into his account.  You paid off a credit
 9     card for him.
10              MS. GUNKOVA:  Oh, credit cards.
11              MR. FREEMAN:  You made a payment for him.
12              MS. GUNKOVA:  Yeah, I made some payments.
```

30.     The Debtor testified that Mr. Bogatin sometimes helps her to make transactions from her personal bank account.[5] Specifically, the Debtor will log into the bank account in her account and Mr. Bogatin will make transfers to and from the account. *Id.* at 42.

---

[5] Two of the Debtor's pre-petition bank accounts, the Wells Fargo account ending in -0217 and the Wells Fargo account ending in -3914, are held jointly with Mr. Bogatin. However, the Debtor's third pre-petition bank account, the TD Bank account ending in -3121, belongs only to the Debtor.

```
 9          MR. FREEMAN:  And just for the record, did anybody
10   else have access to this account or control of this account?
11          MS. GUNKOVA:  No, it's my personal account.
12          MR. FREEMAN:  So any of the transactions on here would
13   have been your doing?
14          MS. GUNKOVA:  I don't remember.  I need to check
15   out --
16          MR. FREEMAN:  My question is, any of the transactions
17   I see on there on the TD Bank account, they would have been
18   done by you.  There's nobody else who has access to going into
19   these?
20          MS. GUNKOVA:  Yes.  Yes.  Sometimes Jacob helps me.
21          MR. FREEMAN:  All right.  When he helps you, do you
22   mean he has his own access, or you log in and he does stuff?
23          MS. GUNKOVA:  I log in, and he does his things.
```

31. On October 28, 2023, the Court issued an order granting creditor Harry Kamin's motion to convert the case to a chapter 7 case. *See* Docket No. 255.

**Transfer of House to Mother**

32. On April 15, 2024, the Debtor caused her residence at 20701 Riptide Square to be transferred to her mother, Natalia Gorbunova, to be jointly held with the Debtor.

| 10/24/24, 1:04 PM | | Loudoun County |
|---|---|---|
| PARID: 006199796000 GUNKOVA, VALERIA & GORBUNOVA, NATALIA | | 20701 RIPTIDE SQ |

**Sales / Transfers**

| Date | Sale Price | Buyer |
|---|---|---|
| 04/15/2024 | $0 | GUNKOVA, VALERIA & GORBUNOVA, NATALIA |

33. In the October 9, 2024 341 meeting ("Second 341") with the Trustee, the Debtor admitted that she transferred her residence to her mother without the authority of the Bankruptcy Court. *See* Transcript of Second 341 at 16.

```
17            MR. KING:  Okay.  You transferred the property a
18   couple of months ago to your mother; is that right?
19            MS. GUNKOVA:  I did.
20            MR. KING:  Yeah.  You didn't have any authority from
21   the bankruptcy court to do that, did you?
22            MS. GUNKOVA:  No, but I will remove my mom's so --
```

34. At this time, the Debtor consented to the avoidance of that transaction to bring the property back into the estate.[6] *Id*. at 17.

35. At the Second 341, the Debtor testified that she was not aware of anything that she misstated at the Initial 341 that needed to be corrected. *Id*. at 8.

36. The Debtor also testified that she listed all of her debts and assets truthfully in her bankruptcy schedules, and that she had answered all of the questions truthfully. *Id*.

**Transfers To and From Skin Logic and BNG**

37. The Debtor's bank accounts reveal a pattern of transfers to and from the bank accounts belonging to Skin Logic (of which the Debtor is the 100% owner) and BNG Group, LLC (of which the Debtor is the 50% owner) in the year leading up to the Debtor's bankruptcy.

38. Specifically, between August 1, 2022 and the Debtor's initial filing on August 3, 2023, the Debtor's TD Bank account ending in -3121 received more than $43,000 from Skin Logic. This money came from two Skin Logic bank accounts: a TD Bank account ending in -6848 and a TD Bank Account ending in -4752.

39. In addition, between August 1, 2022 and the Debtor's initial filing on August 3, 2023, the Debtor transferred over $10,000 from her TD Bank account ending in -3121 to two of

---

[6] The consent order was filed by the Trustee on November 7, 2024. *See* Docket No. 292.

the Skin Logic bank accounts: the TD Bank account ending in -6848 and the TD Bank Account ending in -4752.

40.   Further, between August 1, 2022 and the Debtor's initial filing on August 3, 2023, the Debtor transferred $2,500 from her TD Bank account ending in -3121 to the BNG Group's TD Bank account ending in -8519.

## FAILURES TO DISCLOSE BY THE DEBTOR

**Statement of Financial Affairs (SOFA)**

41.   In Question 7 of the Initial SOFA,[7] the Debtor stated that she had not made payments on any debts owed to anyone who was an insider. *See* Docket No. 1 at 38.

42.   In Question 8 of the Initial SOFA, the Debtor also stated that she had not made any payments or transferred any property on account of a debt that benefitted an insider. *Id*.

43.   In Question 7 of the Fourth Amended SOFA, the Debtor admitted that she had made payments on debts owed to insiders within one year of filing for bankruptcy. *See* Docket No. 274 at 30. The Fourth Amended Petition and Schedules included a list of all insider transfers. *Id*. at 38-39.

44.   In Question 8 of the Fourth Amended SOFA, the Debtor also admitted that she had made payments or transferred property on account of a debt that benefitted insiders within one year of filing for bankruptcy. *Id*. at 31.

45.   By the Debtor's own admission, in the year leading up to the Debtor's bankruptcy, the Debtor transferred at least $64,337.28 to or for the benefit of insiders. *Id*. at 38-39.

---

[7] Neither the First Amended Petition and Schedules nor the Second Amended Schedules contained a revised Statement of Financial Affairs. The first time the Debtor filed a revised SOFA was in September 2024 with the Third Amended Petition and Schedules.

46. Of the $64,337.28 that the Debtor disclosed that she transferred to or for the benefit of insiders, $23,379 were transferred to Jacob Bogatin.

47. Upon information and belief, the U.S. Trustee contends that the Debtor made at least an additional $3,842 in transfers to either Mr. Bogatin or his wife, Galina Bogatin from her three bank accounts.

48. The Plaintiff incorporates by reference each of the pending paragraphs herein as is fully set forth in its entirety.

## FALSE STATEMENTS BY THE DEBTOR

### Schedule I – Income of Debtor

49. The Debtor has failed to list all her income on Schedule I.

50. Specifically, the Debtor failed to report the $43,000 she received from the Skin Logic accounts ending in -6848 and -4752.

## Count 1
## Objection to Discharge Under 11 U.S.C. § 727(a)(2)(A)

51. The Plaintiff incorporates by reference each of the pending paragraphs herein as is fully set forth in its entirety.

52. Section 727(a)(2)(A) provides:

The court shall grant the debtor a discharge, unless the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition […] 11 U.S.C. § 727(a)(2).

53. Upon information and belief and as detailed herein, the Debtor admitted to making transfers to or on behalf of insiders in sums upwards of $65,000.

54. Upon information and belief and as detailed herein, the Debtor also admitted to having transferred ownership of her home to her mother, to be held jointly with the debtor, without approval or authority from the Bankruptcy Court to do so.

55. Therefore, the Debtor should be denied her discharge pursuant to 11 U.S.C. § 727(a)(2)(A).

### Count II
### Objection to Discharge Under 11 U.S.C. § 727(a)(4)

56. The Plaintiff incorporates by reference each of the pending paragraphs herein as is fully set forth in its entirety.

57. Section 727(a)(4) provides:

> The court shall grant the debtor a discharge, unless the debtor knowingly and fraudulently, in or in connection with the case (A) made a false oath or account…

58. Upon information and belief, as detailed herein, the Defendant has knowingly and fraudulently, in or in connection with this case, made multiple false oaths or accounts.

59. Upon information and belief, as detailed herein, the Defendant has made false oaths or accounts on his Schedules and Statement of Financial Affairs by failing to list income from the Skin Logic business and failing to disclose certain transfers to or for the benefit of insiders.

60. Therefore, the Defendant should be denied her discharge pursuant to 11 U.S.C. § 727(a)(4).

WHEREFORE, the Acting United States Trustee respectfully request that this Court enter an order denying the Defendant's discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A) and 727(a)(4) of the Bankruptcy Code, and for such further relief as this Court deems just and proper.

Dated: November 25, 2024

Gerard R. Vetter
Acting United States Trustee for
Region Four

*/s/ Jack I. Frankel*
Jack I. Frankel, VSB #15019
Trial Attorney
Office of the United States Trustee
1725 Duke Street, Suite 650
Alexandria, VA 22314
(703) 557-7229
jack.i.frankel@usdoj.gov