IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **In re:**<br><br>**Valeria Gunkova**<br><br>Debtor. | Case No. 23-11261-BFK<br><br>Chapter 7 |
| **Gerard R. Vetter,**<br>**Acting United States Trustee for Region 4,**<br><br>Plaintiff,<br><br>v.<br><br>**Valeria Gunkova**<br><br>Defendant. | Adversary Proc. |

**DEFENDANT'S OPPOSITION TO**
**TRUSTEE'S MOTION FOR COMPLAINT OBJECTION**
**TO DISCHARGE**

**COMES NOW**, Debtor, Valeria Gunkova ("Debtor"), by herself, hereby opposes the United States Trustee's Motion for Complaint Objecting to Discharge November 26, 2024 (the "Motion"), and submits this opposition, and respectfully states as follows:

## INTRODUCTION

1. The Debtor, Valeria V. Gunkova, respectfully objects to the Complaint filed by Gerard R. Vetter, Acting United States Trustee for Region 4, seeking to deny her discharge in this Chapter 7 case,

2. The Debtor denies the allegations in the Complaint and asserts that the claims made are without merit and fail to meet the legal standards required to deny her discharge under 11 U.S.C. § 727.

## GENERAL DENIAL OF ALLEGATION

3. The Debtor denies the material allegations in the Complaint, except as specifically admitted below. The Debtor contends that she did not engage in any fraudulent or deceptive actions with the intent to hinder, delay, or defraud creditors, nor did she knowingly and fraudulently make any false oath or account.

## UNDISPUTED FACTS

1. On August 3, 2023, the Debtor filed a Petition for relief under Chapter 11 of the Bankruptcy Code.

2. On the Debtor's initial petition, the Debtor stated that she lives at 20701 Riptide Sq., Sterling, VA 20165.

3. The Debtor signed the Petition[1].

4. The Petition contains a statement signed by the Debtor declaring the information to be true and correct under penalty of perjury.

5. On August 3, 2023, the Debtor filed the Schedules.

6. The Debtor signed the Declaration on the Schedules.

7. The Declaration on the Schedules contains a statement signed by the Debtor declaring the information to be true and correct under the penalty of perjury.

8. Soon after, Debtor filed the Statement of Financial Affairs.

9. The Debtor signed the Statement of Financial Affairs.

10. The Statement of Financial Affairs contains a statement signed by the Debtor declaring the information to be true and correct under the penalty of perjury.

11. On Schedule I, the Debtor checked "Not employed" and stated her gross income as $0.00.

12. The Debtor left the occupation line blank on Schedule I.

---

[1] All capitalized terms not otherwise defined have the same meaning ascribed to them in the Motion.

13. The Debtor left question no. 27 of the Statement of Financial Affairs blank.

14. On August 17, 2023, the initial meeting of creditors was held, and the Debtor testified under oath that the information in her bankruptcy filings was true and correct.

15. Approximately two weeks later, the Debtor testified under oath in a hearing related to Skin Logic that he had acted as President of that entity..

16. The debtor also admitted to having transferred ownership of her home to her mother, to be held jointly with the debtor

## DISPUTED FACTS

1. Whether the Debtor's omission of her employment as a President and Master Esthetician for Skin Logic, LLC, was knowingly and fraudulently made, or if it stemmed from a genuine misunderstanding of what constituted formal employment.

2. Whether the Debtor's failure to disclose her occupation and income from Skin Logic, LLC, was a result of language barriers and unfamiliarity with legal terminology rather than a deliberate attempt to conceal information.

3. Whether the Debtor's prompt amendment to Schedule I and Schedule J reflects a sincere effort to rectify innocent errors.

4. Whether the Debtor's misunderstanding of certain questions, particularly regarding her occupation and income sources, was exacerbated by her first language not being English and her academic background being mainly in physics.

5. Whether Skin Logic, LLC, directly or indirectly paying the Debtor's personal expenses was viewed by the Debtor as compensation and employment.

6. Whether the Debtor's amendments and subsequent disclosures were made

3

voluntarily to correct honest mistakes.

7. Whether the Debtor's subsequent disclosures were made voluntarily to Donald King to correct honest mistakes.

## STANDARD OF REVIEW

Under Federal Rule 56 as made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden of demonstrating an absence of a genuine issue of material fact." Labgold v. Regenhardt, 2023 U.S. Dist. LEXIS 196550 (E.D. Va. 2023) (*citing* Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)). "If the movant has met that burden, the non-moving party must demonstrate that such an issue of fact exists." Id. (*citing* Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986). "The facts must be construed in the light most favorable to the nonmoving party, with the burden on the moving party to demonstrate the absence of any genuine issue of material fact." In re Edmond, 934 F.2d 1304, 1307 (4th Cir. 1991) (internal citations omitted).

The Bankruptcy Code at § 727(a)(4) states, in relevant part, the discharge may be denied if "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account". In a motion for Summary Judgment, the Court must assess "whether a reasonable trier of fact, viewing the evidence in the light most favorable to [the Debtor], would be entitled to conclude that her inconsistent statements were made innocently." Mercantile Peninsula Bank v. French (In re French), 499 F.3d 345,351 (4th Cir. 2007). It is additionally important to highlight that "[g]enerally speaking, deciphering a debtor's motivation or intent is a question of fact." In re

4

Spearman, 2020 Bankr. LEXIS 1602 at 3 (Md. Bankr. 2020) (citing Williamson v. Fireman's Fund Ins. Co., 828 F.2d 249, 251 (4th Cir. 1987); Ford v. Poston, 773 F.2d 52, 55 (4th Cir. 1985)).

**ARGUMENT**

In this case, the Debtor did not intend to provide false information. The Debtor candidly provided the Trustee with all important information at the creditors' meeting and did not conceal any financial information. In fact, the Debtor willingly provided the Trustee with a clear accounting of her expenses along with all her credit cards at the creditors' meeting. Transcript, page 25, lines 2-9; Transcript, page 28-29, lines 21-25, 1-4; Transcript, page 34, lines 14-21; Transcript, page 217-18, lines 22-25, 1-2; Transcript, page 21-22, lines 22-25, 1-13. Furthermore, it's important to note that English is not the Debtor's first language, and any errors as a result of misunderstanding and miscommunication cannot evidence an attempt to defraud.

**A. The Trustee Alleges No Examples of a Knowing and Fraudulent False Account.**

Skin Logic employment - As she clearly testified at her 341 meeting, the Debtor did not believe that she was required to disclose her assistance to Skin Logic because she was technically not employed by Skin Logic. her assistance to Skin Logic could not have constituted employment as (i) there was never an official employment agreement, and (ii) she was never paid a salary or wages. See Transcript, page 58-60, lines 22-25, 1-25, 1-7; Transcript, page 85, lines 2-20.

The Debtor did not initially disclose her "monthly income" of $4714,90 because during 10 years prior filling petitions, she was not "paid" this money in the form of a paycheck. Instead, Skin Logic paid some of her expenses directly, and the Debtor did not consider this income in the traditional sense.

Engagement band - The Debtor's omission of an engagement band holds no significance. Under Va. Code Ann. § 34-26, engagement rings and "all wearing apparel of the householder not

5

to exceed $1,000 in value" are exempt from creditors. Since the Debtor's engagement ring is valued at only $200, its non-disclosure does not suggest an intent to defraud. Moreover, given its exemption from creditor process and its minimal value relative to the overall proceedings, its disclosure would not materially alter the outcome of the bankruptcy proceedings. Additionally, the Debtor maintains that her first language is not English and was originally confused by this question.

For all of the above representations under oath in the Schedules or at the 341 Meeting, the Debtor simply misunderstood what she was asked and voluntarily took action to rectify these mistakes. Mistakes made by a Debtor do not amount to fraud without additional proof of an intent to defraud. See In re Fisher, 2009 Bankr. LEXIS 2958 at 14 ("In order to be denied a discharge under [11 U.S.C. § 727(a)(4)], the debtor must have made a statement under oath which she knew to be false, and she must have made the statement willfully, with the intent to defraud.") (citing In re Williamson, 828 F.2d 249, 251 (4th Cir. 1987)). Despite the Trustee's unsupported arguments that the Debtor's mistake equals fraud, the Debtor argues the more likely inference is that the Debtor made a series of errors, and thereafter corrected those errors.

### B. There Are Genuine Issues of Material Fact in this Case

As held by the Fourth Circuit in In re French, 499 F.3d. 345, (4th Cir. 2007):

> [T]he court ruled that summary judgment should be granted only where it is clear that there is no dispute about the facts or inferences to be drawn therefrom. The court stated:
>
> Although it is uncontroverted that [the Debtor] made inconsistent statements, *the presence of conflicting testimony, without more, does not inherently establish fraudulent intent.* This is especially true at the summary judgment stage where [the Debtor] has not "remained silent," has specifically denied having an intent to defraud, and has proffered explanations for her conflicting statements that she was oftentimes confused or misunderstood the question asked. The

6

> competence of the nonmovant's own testimony is treated no differently than that of any other potential witness. By disregarding [the Debtor's] explanations and denial, the bankruptcy court was, in effect, weighing the evidence and making credibility determinations—all while failing to give [the Debtor] the benefit of all reasonable inferences.

Id. (emphasis added).

In the Motion, the Trustee makes a tortured effort to distinguish French by claiming that, "the circumstances of this situation are clearly different." However, the binding Fourth Circuit authority in French is squarely on all fours with the facts of this case.

In French, the Fourth Circuit vacated and remanded a motion for summary judgment when a creditor alleged the debtor had knowingly made false oaths. The creditor seeking summary judgment pointed to numerous "examples of inconsistent statements that [the debtor] had made under oath in connection with her bankruptcy proceedings, including statements that she had subsequently acknowledged as inaccurate." French, 499 F.3d. at 350. The debtor's opposition maintained there was no genuine issue of material fact as to whether she had intentionally made false statements. See Id. The debtor claimed, "that any inconsistencies in the evidence were the result of confusion, her failure to understand certain questions she had been asked (in part because of her limited education--high school only--and unfamiliarity with legal terminology), and her inability to recall the information requested." Id. at 341. The Fourth Circuit held that the bankruptcy court improperly granted summary judgment and stated, "a reasonable factfinder could, in this case, readily conclude that French lacked the requisite intent to make false oaths." Id. at 353.

This is identical to the facts of this case. There are no undisputed facts that support a finding that the Debtor intended to make false oaths. Debtor's first language is Russian, and the language barrier presents challenges in fully comprehending complex financial matters. Further, stating that

the Debtor is "very well educated" is a clear oversimplification of the matter at hand. Most of the Debtor's degrees are in Physics and were acquired at an institution in Russia. This has no bearing on the allegations in this case.

In the Motion, the Trustee asserts that a *prima facie* case of fraudulent intent is shown by the Debtor's testimony that she was an Executive Consultant for Skin Logic two weeks before she listed that she was not employed in her own schedules. However, this directly rebuts any allegation of fraudulent intent. This court cannot find that the Debtor was attempting to hide anything from the Trustee or her creditors when she quite literally testified to the alleged missing employment prior to the preparation of her schedules. As stated above, the Debtor did not realize that his consulting role constituted a formal "employment". As soon as this misunderstanding was pointed out to the Debtor, she quickly amended her schedules to reflect the unconventional "income" she was receiving from Skin Logic. See Transcript, page 58-60, lines 22-25, 1-25, 1-7; Transcript, page 85, lines 2-20.

The Debtor's lack of fraudulent intent is further demonstrated by the fact that she walked into the creditors' meeting with a complete accounting of expenses that Skin Logic had paid. The Debtor frequently tried to reference this document in the meeting and was often interrupted and shut down by a creditor's attorney and the Trustee.

. The Debtor has been an open book and has fully disclosed all facts relating to her financial condition to the Trustee. As such, the Motion should be denied.

### C. The Motion Should be Denied due to "Evidence of Innocent Intent"

In the Motion, the Trustee asserts that despite the debtor's good faith effort to amend her schedules and voluntary disclosure of the incidental errors in the bankruptcy schedule, her discharge should still be denied. However, courts within this Circuit have regularly held that "[a]lthough the subsequent disclosure of omitted information does not expunge a prior false oath,

8

courts have consistently held that a debtor's later disclosure is 'some evidence of innocent intent' and have further held that false statements due to mere mistake or inadvertence are insufficient to deny a debtor a discharge." In re Spearman, 2020 Bankr. LEXIS. at 23-24 (internal citation omitted).

The Eastern District of Virginia has itself been skeptical about prematurely granting a motion for summary judgment when there is a question of intent. See e.g. In re Locke, 2012 Bankr. LEXIS 3544 (2012). This Court has held that the mere fact that the original schedules and statement of financial affairs are incorrect is not, by itself, sufficient to deny a debtor discharge - the false oath must be knowingly and fraudulently made. Id. at 6. The Court additionally noted that the debtor promptly amended her schedules and reasonably concluded that there is a genuine issue as to whether they were both knowingly and fraudulently made because the prompt correction may point to an innocent error. Id.

The Trustee's reliance on out-of-circuit cases is not persuasive. First, the Trustee cites In re Beard, 595 B.R. 274, 293 (Bankr. E.D. Ark. 2018), for the proposition that "[t]he fact that the debtor filed amended schedules ... does not negate the fact that the debtor's original schedules and statements were inaccurate." Id. Not only does the Trustee fail to cite that this assertion was only made in a footnote, but the case itself appears to bolster the Debtor's position rather than the Trustee's. In re Beard, in its interpretation of § 727(a)(4)(A) finds that "whether the debtor had the requisite knowledge and intent under § 727(a)(4)(A) is a matter of fact." The court found that even though the debtor made false, material statements under oath, "trustees failed to prove by a preponderance of the evidence that the debtor did so with the fraudulent intent required under § 727(a)(4)(A)." Id. at 295.

The Trustee also unpersuasively cites In re Sholdra, 249 F.3d 380, 383 (5th Cir. 2001), because the Debtor amended her schedules after her 341 meeting. However, the 5th Circuit clearly

9

refused to decide "whether such amendments could ever preclude summary judgment denying discharge". Id. at 383. The court only approved summary judgment because the debtor "remained silent and did not present any facts creating genuine issues of material fact." Id. The facts in this case are the exact opposite. The Debtor is not remaining silent and has fully and truthfully answered all questions and provided all requested documents.

The Trustee confusingly cites In re Mellor, 226 B.R. 451, 459–60 (D. Colo. 1998), for a proposition that discharge must be denied when amendments to schedules are only made because "the cat was out of the bag." However, Mellor held quite the opposite:

> Otherwise, the court in this case states that "[a]s a matter of law, no inference of fraudulent intent can be drawn from an omission when the debtor promptly brings it to the court's or Trustee's attention absent other evidence of fraud. Further, a Debtor's voluntary filing of an amendment as soon as practicable may be accepted as evidence of the absence of the element of the fraudulent intent necessary to sustain a § 727(a)(4)(A) claim."

In re Mellor, 226 B.R. at 459 (internal citations omitted).

The Debtor brought a complete accounting of all of the money she indirectly received from Skin Logic and volunteered this accounting to the Trustee and the creditors without being asked. Further, she testified to the Trustee and the same creditor's attorney two weeks prior to the filing of her schedules that she had assisted Skin Logic as an Executive Consultant.

As the Debtor promptly and voluntarily brought any incidental nondisclosure to the Trustee's attention as soon as practicable, the Motion must be denied.

### Response to Count I – Objection to Discharge Under 11 U.S.C. § 727(a)(2)(A)

4. The Plaintiff alleges that the Debtor transferred property with the intent to hinder, delay, or defraud creditors. The Debtor denies these allegations and asserts that any transfers made were made in good faith, and with no intention to hinder or defraud creditors.

5. The transfer of the Debtor's residence was made under valid circumstances and does not meet the criteria for denial of discharge under 11 U.S.C. § 727(a)(2)(A).

### Response to Count II – Objection to Discharge Under 11 U.S.C. § 727(a)(4)

6. The Plaintiff alleges that the Debtor made false statements in her bankruptcy filings, including omissions of income and transfers.
7. The Debtor admits that her schedules and Statement of Financial Affairs were amended multiple times but denies any intent to conceal or mislead. Any errors or omissions were made without fraudulent intent, and the Debtor has cooperated with the Trustee's requests for additional information.
8. The Debtor asserts that she made good faith efforts to provide accurate information in her filings and does not meet the criteria for denial of discharge under 11 U.S.C. § 727(a)(4).

### Affirmative Defenses

9. **Lack of Intent to Defraud:** The Debtor asserts that there was no fraudulent intent behind any actions or omissions in her bankruptcy case.
10. **Full Cooperation:** The Debtor has cooperated fully with the Chapter 7 Trustee and the U.S. Trustee's office in providing information and documents related to her financial affairs.
11. **Good Faith Mistakes:** Any discrepancies in the Debtor's filings were unintentional errors or oversights that were promptly corrected once discovered.
12. **No Prejudice to Creditors:** The Debtor asserts that there has been no prejudice to creditors by the filing of her bankruptcy case and that no intentional concealment of assets has occurred.

### Conclusion and Prayer for Relief

For the foregoing reasons, the Debtor respectfully requests that the Court deny the Plaintiff's Complaint Objecting to Discharge and granting the Debtor's discharge in this Chapter 7 case. Given the genuine issues of material fact and the lack of evidence of fraudulent intent, the Motion must be denied. Under controlling precedent and the facts at hand, the Debtor is entitled to her day in court to fully present her case.

December 16, 2024,    /s/ Valeria Gunkova    Valeria Gunkova

Valeria Gunkova  
20701 riptide sq.  
Sterling VA 20165  
Valeria@ariamedispa.com  
703 344 3189

## CERTIFICATE OF SERVICE

I certify that on this 16th day of December 2024, a true and correct copy of the foregoing was filed electronically with the Court through the ECF filing system, and notice was automatically provided to all those entitled to receive it.

*/s/ Valeria Gunkova*

**Valeria Gunkova**

12