**United States Bankruptcy Court**
**Eastern District of Virginia**
<u>**Alexandria Division**</u>

**In re:**

| | |
|---|---|
| **Valeria V. Gunkova,** | Bankr. Case No. 23-11261-BFK, Chapter 7 |
| Debtor. | |

-----------------------------------

| | |
|---|---|
| **Matthew W. Cheney,** **Acting United States Trustee** **For Region 4,** | |
| Plaintiff, | |
| v. | Adversary Proc. No. 24-01062-BFK |
| **Valeria V. Gunkova,** | |
| Defendant. | |

<u>**Motion for Summary Judgment**</u>

Matthew W. Cheney, Acting United States Trustee for Region 4, by counsel, moves the Court for summary judgment, on the following:

>Count I - 11 U.S.C. § 727(a)(2) – transfer of assets.

>Count II - 11 U.S.C. § 727(a)(4)(A) – false oath or account.

<u>**Summary**</u>

Valeria V. Gunkova is the Debtor in this chapter 7 bankruptcy proceeding. Ms. Gunkova is the President of Skin Logic, LLC, a medical spa in its own subchapter V bankruptcy proceeding.

Katharine I. Toledo
Trial Attorney
Office of United States Trustee
1725 Duke Street, Suite 650
Alexandria, VA 22314
(202)-603-5203
Katharine.I.Toledo@usdoj.gov

After the Debtor filed for bankruptcy, the Acting United States Trustee filed a two-count adversary complaint objecting to the discharge.

The Debtor transferred ownership of her residence at 20701 Riptide Square, Sterling, Virginia 20165 to her mother, to be held jointly with the Debtor, during her chapter 11 bankruptcy, without approval or authority from the Bankruptcy Court to do so, and with the intent to hinder or delay her creditors. The Debtor admitted that her intent in effectuating the transfer was to retain the asset for her mother, despite the Debtor's bankruptcy.

In addition, the Debtor transferred tens of thousands of dollars to or for the benefit of insiders in the year leading up to her bankruptcy with the intent to hinder or delay her creditors.

The Debtor also gave false oaths on her schedules and Statement of Financial Affairs by providing false and misleading figures regarding her salary in five different sets of bankruptcy schedules and under oath in multiple 341 meetings.

For these reasons, the Court should grant summary judgment to the Acting United States Trustee on both counts.

In support of this motion, the following representations are made:

**Undisputed Facts**

1. On August 3, 2023, the Debtor filed a voluntary petition for relief ("the Initial Petition") under Chapter 11, subchapter V of the Bankruptcy Code.

2. The Debtor signed the Initial Petition. Docket No. 1 at 6.

3. Above the Debtor's signature on the initial petition is the statement: "I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct."

4. On August 3, 2023, the Debtor filed the Schedules ("the Initial Schedules). *Id*. at 13.

5. The Debtor signed the Schedules' Declaration. *Id*. at 36.

6. Above the Debtor's signature on the Declaration About an Individual Debtor's Schedules is the statement, "Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct." Declaration About Individual Debtor's Schedules, *Id*. at 36.

7. On August 3, 2023, the Debtor filed the Initial Statement of Financial Affairs ("the Initial SOFA"). *Id*. at 37.

8. The Debtor signed the Initial SOFA. *Id*. at 43.

9. Above the Debtor's signature is the statement "I have read the answers to this Statement of Financial Affairs and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both." *Id*. at 43.

10. The Debtor's Initial Schedule A/B states that the Debtor owns the property at 20701 Riptide Square, Sterling, VA 20165 ("the residence") in fee simple. *Id*. at 15.

11. The Debtor's Initial Schedule I stated that the Debtor was employed as the President of Skin Logic, LLC.

12. Initial Schedule I listed the Debtor's only monthly income as $5,832 in gross wages, salary, and commissions from Skin Logic. *Id*. at 32.

13. Initial Schedule I listed that the Debtor did not receive any "other monthly income". *Id*. at 33.

3

14. On Question 7 of the Initial SOFA, the Debtor answered "No" to the question "Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?" *Id.* at 38.

15. On question 8 of the Debtor's Initial SOFA, the Debtor answered "No" to the question "Within 1 year before you file for bankruptcy, did you make any payments or transfer any property on account of a debt that benefitted an insider". *Id.*

16. On question 13 of the Initial SOFA, the Debtor answered "No" to the question "Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?" See *id*. at 39.

17. The Debtor signed the initial schedules and declared, under penalty of perjury, that she had read the summary and schedules, and that they are true and correct. *See id*. at 36.

18. On October 11, 2023, the Initial 341 Meeting of Creditors ("Initial 341") was held. The Debtor appeared with counsel Nancy D. Greene.

19. Assistant U.S. Trustee Michael T. Freeman conducted the Initial 341.

20. At the Initial 341, the Debtor was placed under oath and testified that the information in her bankruptcy filings was true and correct.

21. On October 31, 2023, the Debtor filed an amended petition and schedules ("First Amended Petition and Schedules"). *See* Docket No. 135.

22. The First Amended Schedule A/B did not list the Debtor's residence in question 1. *Id*. at 17.

23. In the First Amended Schedule I, the Debtor reported her only monthly income as $6,200.00 in gross wages, salary, and commissions from Skin Logic. *Id*. at 35.

4

24. On October 28, 2023, the Court issued an order granting creditor Harry Kamin's motion to convert the case to a chapter 7 case. *See* Docket No. 255.

25. On November 7, 2023, the Debtor filed additional amended schedules ("Second Amended Schedules"). *See* Docket No. 142.

26. The Second Amended Schedule A/B also failed to list the Debtor's residence in question 1. *Id*. at 2.

27. The Second Amended Schedule I reported the Debtor received $6,200 in gross wages, salary, and commissions, and an additional $1,750.00 from family support in Line 8C. *Id*. at 7-8.

28. On April 15, 2024, while the Debtor was in chapter 11 bankruptcy, the Debtor caused her residence to be transferred to her mother, Natalia Gorbunova, to be held jointly with the Debtor, without the authority of the Bankruptcy Court.

29. On August 1, 2024, Harry Kamin ("Mr. Kamin"), the main creditor and Debtor's former business partner, filed a Motion to Convert the case to chapter 7. Docket No. 237.

30. On August 28, 2024, the Court granted Mr. Kamin's motion and ordered that the Debtor's case be converted to chapter 7. Docket No. 255.

31. Donald F. King ("the Trustee" or "Mr. King") was appointed as the chapter 7 trustee on August 28, 2024. Docket No. 256.

32. On September 24, 2024, the Debtor filed another amended petition and schedules ("Third Amended Petition and Schedules"). *See* Docket No. 269.

33. The Third Amended Schedule A/B corrected the omission of the Debtor's residence. *Id*. at 9.

5

34.  The Third Amended Schedule I reported the Debtor's gross monthly wages, salary, and commissions as $6,591.40, and that the Debtor also received $2,015.00 in family support. *See id*. at 36.

35.  On September 25, 2024, the Debtor filed the most recent version of the petition and schedules ("Fourth Amended Petition and Schedules").[1] *See* Docket No. 274. In Schedule I, the Debtor reported her gross monthly wages, salary, and commissions as $6,591.40, plus an additional $2,015.00 reported in Line 8C as family support. *Id*. at 22-23.

36.  The Trustee conducted the chapter 7 341 meeting ("Second 341") on October 9, 2024 and the Debtor was placed under oath.

## Standard for Summary Judgment

The party seeking summary judgment must inform the Court of the legal basis of its motion and demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party presents a properly supported motion for summary judgment, the nonmoving party must present affirmative evidence to defeat that motion. Only a genuine dispute over a material fact will preclude summary judgment. The opposing party must demonstrate that a triable issue of fact exists and may not rest upon mere allegations or denials. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

## Statement of the Law

---

[1] At the October 9, 2024 341 meeting, Debtor's counsel, Ms. Greene, stated that the Fourth Amended Petition and Schedules were filed solely to address a deficiency caused by signatures that loaded improperly on the Third Amended Petition and Schedules.

"§ 727 of the Bankruptcy Code allows debtors to receive a general discharge of their obligations in keeping with the primary purpose of bankruptcy law, to give honest debtors a fresh start unhampered by the pressure and discouragement of preexisting debt. However, certain provisions of § 727 prohibit discharge for those who play fast and loose with their assets or with the reality of their affairs." *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 249 (4th Cir. 1994) (cleaned up).

"Provisions enumerated in § 727(a)(1)-(10) prohibit a discharge for those who play fast and loose with their assets or with the *reality of their affairs*. These provisions are designed to ensure that complete, truthful, and reliable information is put forward at the *outset of the proceedings*, so that decisions can be made by the parties in interest based on fact rather than fiction. *In re Myers*, No. 15-26033-WIL, 2018 WL 4701387, at *6 (Bankr. D. Md. Sept. 28, 2018) (cleaned up) (emphasis added).

Section 727(a) of the Bankruptcy Code enumerates twelve circumstances under which a Bankruptcy Court may deny a discharge. A plaintiff must only prove one of the grounds for non-dischargeability under § 727(a) because its provisions are in the disjunctive. *Faruoki v. Emirates Bank Int'l*, 14 F.3d 244, 250 (4th Cir. 1994).

The standard of proof in a discharge action is proof by a preponderance of the evidence. Proof of conduct satisfying any one of the statutory subsections is enough to justify denial of the debtor's discharge. *Id.* at 249.

### Count I

### Transfer of Property - § 727(a)(2))

Section 727(a)(2) of the Bankruptcy Code provides, "The court shall grant the debtor a discharge, unless . . . (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer

of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—(A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A)-(B).

The elements for an action under § 727(a)(2)(A) are: "(1) the act in scrutiny occurred during the one year time period prior to the bankruptcy; (2) the act in question was done with the actual intent to hinder, delay, or defraud a creditor or the trustee; (3) the debtor or his duly authorized agent was the actor; and (4) the act in question consisted of either transferring, removing, destroying, mutilating, or concealing debtor's property." *McDow v. Geddings (In re Geddings)*, 2006 Bankr. LEXIS 161, at *8-9 (Bankr. D.S.C. Jan. 27, 2006), *citing Anderson v. Hooper (In re Hooper)*, 274 B.R. 210, 215 (Bankr. D.S.C. 2001)).

"Under § 727(a)(2)(B), the same elements to deny a discharge under § 727(a)(2)(A) apply, with the notable difference being the time period which runs after the filing of bankruptcy." *In re Caletri*, 517 B.R. 655, 670 (Bankr. E.D. La. 2014). To prevail under § 727(a)(2)(B), the Plaintiff must demonstrate "(1) a transfer of property; (2) belonging to the estate; (3) after the date of the filing of the petition; and (4) with the intent to hinder, delay, or defraud a creditor or officer of the estate." *Robbins v. Katz*, No. 24-10356-DER, 2017 LEXIS 336 (Bankr. D. Md. Feb. 7, 2017), at *11, citing *In re Seiber*, 489 B.R. 531, 545 (Bankr. D. Md. 2013) and *In re Golob*, 252 B.R. 69, 78 (E.D. Va. 2000).

"Debtors' intent can be proved by direct or circumstantial evidence drawn from the Debtors' course of conduct." *Geddings,* 2006 Bankr. LEXIS 161, at *9 (*citing Hooper*, 274 B.R. at 217)).

8

Courts in the Fourth Circuit look to "badges of fraud" that indicate fraudulent intent, including (1) "family, friendship or insider relationships between the parties"; (2) "the debtor's retention of possession, benefit, or use of the property in question"; (3) "the lack of or inadequacy of consideration for the transfer"; (4) "the debtor's financial condition before and after the transfer"; (5) "the existence or cumulative effect of the pattern or series of transactions or course of conduct after incurring the debts, onset of financial difficulties, or pendency of threats of suits by creditors"; (6) "the general chronology of the events and transactions under inquiry"; (7) "the debtor's attempt to keep the transfer a secret"; and (8) "the proximity of the transfer to the debtor's filing bankruptcy." *In re Jeffries*, 541 B.R. 317, 324-25 (Bankr. M.D.N.C. 2015), citing *In re Michael*, 452 B.R. 908, 917 (M.D.N.C. 2011).

"Bankruptcy is not a game of hide and seek that the debtor plays with the trustee and the Court. Full disclosure is the *quid pro quo* for a debtor's discharge." *Geddings*, 2006 Bankr. LEXIS 161, at *11 (*citing Anderson v. Walker (In re Walker)*, 2001 Bankr. LEXIS 1849, at *19 (Bankr. D.S.C. Jan. 5, 2001)). In sum,

> It is not up to the trustee and other parties in interest to ferret out the truth about Debtors' assets and financial affairs. The critical time for disclosure is at the time of the filing of a petition and Debtors have the responsibility to do so. Bankruptcy law requires Debtors to be honest and to take seriously the obligation to disclose all matters. The bankruptcy Schedules and Statements of Financial Affairs are carefully designed to elicit certain information necessary to the proper administration and adjudication of the case. To allow Debtors to use their discretion in determining relevant information to disclose would create and [sic] end-run around this strictly crafted system.

*Geddings,* 2006 Bankr. LEXIS 161, at *11 *(citing Siegel v. Weldon (In re Weldon)*, 184 B.R. 710, 715 (D.S.C. 1995)).

*The Debtor admitted that during her bankruptcy she transferred her residence to her mother, to be held jointly with the Debtor, with the intent to keep the residence out of the bankruptcy estate.*

9

Summary judgment is appropriate under § 727(a)(2)(B) because all four of the *Robbins* factors are satisfied with respect to the Debtor's transfer of the residence during her bankruptcy.

First, property tax records from Loudoun County show that on April 15, 2024—while the Debtor was in chapter 11 bankruptcy—the Debtor's residence was transferred to her mother, Natalia Gorbunova, to be held jointly with the Debtor, for $0.00.

```
10/24/24, 1:04 PM                                                    Loudoun County
PARID: 006199796000
GUNKOVA, VALERIA & GORBUNOVA, NATALIA                                20701 RIPTIDE SQ

Sales / Transfers

Date          Sale Price    Buyer
04/15/2024    $0            GUNKOVA, VALERIA & GORBUNOVA, NATALIA
```

Second, the residence was part of the bankruptcy estate because prior to the transfer, it was owned in fee simple by the debtor. Third, the transfer, which took place April 15, 2024, clearly took place after the bankruptcy petition was filed on August 3, 2023.

The fourth element of *Robbins*—that the transfer was effectuated to hinder, delay, or defraud a creditor or officer of the estate—has been conceded by the Debtor on at least two occasions. First, in a letter from the Debtor to the Acting U.S. Trustee dated December 25, 2024, the Debtor stated that "Adding [my mother] to the deed was a practical decision based on her contributions and my genuine concern for her well-being. At the time, I believed I would be discharged from bankruptcy and felt it was unjust to risk making my 80-year-old mother homeless." A copy of the December 25, 2024 letter is attached as **Exhibit 1**. Second, in an undated letter provided to both the Office of the U.S. Trustee and Judge Kenney at the January 21, 2025 pre-trial scheduling conference, the Debtor stated, with regards to the transfer of the house, "Given [my mother's] age, limited resources, and dependence on me for care, I added her to the deed to

10

ensure she would not be left homeless… It was a protective measure for her, made in good faith." A copy of the undated letter given to Judge Kenney at the January 21, 2025 pre-trial scheduling conference is attached as **Exhibit 2**. Both of the Debtor's admissions demonstrate her understanding of the reality that adding her mother to the title of the residence would have the effect of keeping the residence out of the bankruptcy estate. As such, no jury could hold that the Debtor did not intend to hinder or delay creditors and officers of the bankruptcy estate.

*The Debtor admitted to making substantial transfers to or for the benefit of Jacob Bogatin and other insiders in the year leading up to her bankruptcy.*

The Debtor's Fourth Amended SOFA disclosed that she transferred at least $64,337.28 to or for the benefit of insiders between August 2022 and August 2023, when the petition was filed, from both her personal bank account (TD Bank Account ending in -3121) and a joint bank account that the Debtor holds with Jacob Bogatin ("Mr. Bogatin"), her romantic partner (Wells Fargo Bank Account ending in -0217). *See* Docket No. 274 at 38-39.

Upon information and belief, the Acting United States Trustee's review of the Debtor's bank statements from August 2022 to August 2023 shows that the Debtor transferred at least an additional $3,842 to Mr. Bogatin and his wife Galina Bogatin, from the TD Bank Account ending in -3121 and the Wells Fargo Bank Account ending in -0217. As such, the Acting U.S. Trustee contends that the Debtor made total of at least $68,179.28 in transfers to Mr. Bogatin and other insiders in the year leading up to the Debtor's bankruptcy.

Summary judgment is appropriate under § 727(a)(2)(A) because all four *Geddings* factors are satisfied under the same or similar facts. *Geddings* elements (1), (3), and (4) are easily satisfied. Under element (1), the Debtor filed her petition on August 3, 2023 and the transfers to Mr. Bogatin and other insiders all occurred between August 2022 and August 2023, and therefore occurred

11

within one year of the Debtor's filing of the petition. Element (3) is also satisfied because the Debtor stated that either she or Mr. Bogatin were the only ones who could have made the transfers.[2]

```
 9            MR. FREEMAN:  And just for the record, did anybody
10     else have access to this account or control of this account?
11            MS. GUNKOVA:  No, it's my personal account.
12            MR. FREEMAN:  So any of the transactions on here would
13     have been your doing?
14            MS. GUNKOVA:  I don't remember.  I need to check
15     out --
16            MR. FREEMAN:  My question is, any of the transactions
17     I see on there on the TD Bank account, they would have been
18     done by you.  There's nobody else who has access to going into
19     these?
20            MS. GUNKOVA:  Yes.  Yes.  Sometimes Jacob helps me.
21            MR. FREEMAN:  All right.  When he helps you, do you
22     mean he has his own access, or you log in and he does stuff?
23            MS. GUNKOVA:  I log in, and he does his things.
```

Further, element (4) is satisfied because the activity in question is a pattern of transfers or payments made out of the Debtor's personal bank account for or on behalf of insiders.

As for element (2), there is no genuine issue of material fact regarding the Debtor's transfers to and on behalf of insiders with the actual intent to defraud creditors because at least five of the eight badges of fraud are present.

First, all of the transfers disclosed by the Debtor in the Fourth Amended SOFA were made to or on behalf of insider parties, including Mr. Bogatin, Skin Logic, or BNG, LLC, another business of which the Debtor is a 50% owner. Second, it is unclear whether the Debtor received consideration for many of the transfers made—most notably, the transfers to Mr. Bogatin directly that were unrelated to his payroll from Skin Logic. Third, the cumulative effect of the series of

---

[2] Even if Mr. Bogatin made the transfers, he did so on behalf of the Debtor insofar as he utilized her login to her personal bank accounts. Specifically, according to the Debtor's testimony in the Initial 341, she would log into her online bank account and allow Mr. Bogatin to "do[] his things". As such, any transfers made by Mr. Bogatin rather than by the Debtor were made with her implicit permission and as the Debtor's agent.

12

transfers that the Debtor made from her two bank accounts was significant. By the Debtor's own admission in her most recent bankruptcy Schedules, more than $64,000 were transferred out of her accounts in the year leading up to the bankruptcy. Fourth, the overall chronology of events suggests that these transfers were intended to hinder or delay the Debtor's creditors, particularly Mr. Kamin, who filed a lawsuit in the Circuit Court of Loudoun County, Virginia against the Debtor in March 2021, case number CL21001557-00. The lawsuit was steadily progressing through discovery in the year leading up to the Debtor's bankruptcy; it was stayed when the Debtor filed for bankruptcy in August 2023. Finally, the Debtor attempted to keep these transfers secret, as they were not disclosed in any of the first three Statements of Financial Affairs. Rather, the Debtor did not disclose these transfers until the Third and Fourth Amended SOFAs, both filed in late September 2024—more than a year after the start of the bankruptcy and after it had been converted to chapter 7.

For these reasons, summary judgment is warranted on Count I of the Acting United States Trustee's complaint under Section 727(a)(2) of the Bankruptcy Code.

**Count II**

**False Oaths - § 727(a)(4)(A)**

Section 727(a)(4)(A) of the Bankruptcy Code provides that the court shall grant the debtor a discharge unless "the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account."

"A debtor has a paramount duty to carefully consider all questions posed on his schedules and statement of affairs and see that each question is answered completely in all respects." *Spencer v. Hatton (In re Hatton)*, 204 B.R. 470, 477 (Bankr. E.D. Va. 1996), *aff'd*, 204 B.R. 477 (E.D. Va. 1997).

13

To be denied a discharge under § 727(a)(4), "'the debtor must have made a statement under oath which he knew to be false, and he must have made the statement willfully, with the intent to defraud.'" *Mercantile Peninsula Bank v. French (In re French)*, 499 F.3d 345, 352 (4th Cir. 2007), quoting *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir. 1987)). This Court can find fraudulent intent "if a debtor has exhibited a reckless indifference to the truth, and courts have found this reckless indifference where the number of errors in the debtor's oaths produces a cumulative effect that indicates a pattern of cavalier disregard for the truth." *Geddings*, 2006 Bankr. LEXIS 161, at *13-14 (citations omitted).

In addition, the false oath must relate to a material matter. *See Geddings*, 2006 LEXIS 161, at *12 (citation omitted). "A material matter is one that bears a relationship to the existence and disposition of a debtor's property." *Id.* at *14 (citation omitted).

*<u>The Debtor made false oaths or accounts on her Schedules and Statement of Financial Affairs with intent to defraud by falsely and misleadingly providing conflicting figures as to her income from Skin Logic and failing to disclose income that she received in the form of family support.</u>*

The Debtor's income from Skin Logic has been an open question throughout the course of her bankruptcy. The Debtor reported different figures as to her monthly income in four of the five versions of her bankruptcy petition and schedules. First, in the Initial Schedules, the Debtor listed her gross wages, salary, and commissions from Skin Logic as $5,832.00. Docket No. 1 at 32. In the First Amended Schedules, the Debtor reported her gross wages, salary, and commissions from Skin Logic as $6,200.00. Docket No. 135 at 36. The Second Amended Schedules again reported the debtor's gross wages, salary, and commissions from Skin Logic as $6,200.00, but also disclosed that the Debtor received $1,750.00 in support from her family. Docket No. 142 at 7. Both the Third and Fourth Amended Schedules reported the Debtor's monthly gross wages, salary, and

14

commissions from Skin Logic as $6,591.40, and that the Debtor received an additional $2,015.00 in family support. Docket No. 269 at 36; Docket No. 274 at 22.

Each of these figures likewise contradicts other information that the Debtor has provided regarding her salary. According to testimony from the Initial 341, prior to bankruptcy, Skin Logic's payroll indicated that the Debtor was paid $3,100.00 per month. However, in the Initial 341, the Debtor testified that she was not actually paid this money. *See* Transcript of Initial 341 at 33-34.

```
 8         MR. FREEMAN:  All right.  And I'm referencing prior
 9   testimony from your Skin Logic case, but is it correct to say
10   that prior to the filing of the bankruptcy, your payroll
11   reflected 3,100 dollars a month, but that money was not paid to
12   you, correct?
13         MS. GUNKOVA:  Before bankruptcy?  Yes.
14         MR. FREEMAN:  Before bankruptcy?
15         MS. GUNKOVA:  Yes.
16         MR. FREEMAN:  So before bankruptcy --
17         MS. GUNKOVA:  I never --
18         MR. FREEMAN:  -- you weren't getting paid --
19         MS. GUNKOVA:  I never --
20         MR. FREEMAN:  -- the 3,100 a month?
21         MS. GUNKOVA:  -- deposit any checks, so I shreds my
22   checks.
```

Instead, the Debtor testified, Skin Logic paid for her mortgage, car, and other personal expenses. *Id*. at 34.

```
 5              MS. GUNKOVA:  I -- no.  And Skin Logic paid for my
 6    mortgage and car.
 7              MR. FREEMAN:  Yeah.  So it's Skin Logic pay for your
 8    mortgage --
 9              MS. GUNKOVA:  Yes.
10              MR. FREEMAN:  -- for your car --
11              MS. GUNKOVA:  Yes.
12              MR. FREEMAN:  -- for all your personal expenses?
13              MS. GUNKOVA:  It's (indiscernible) and I supposed
14    to -- yeah.
```

Before the case was converted to a chapter 7 case, the Debtor's income was particularly salient because the Debtor intended to use her income, and only her income, to finance a chapter 11 plan. *See* Transcript of Initial 341 at 20.

```
 4              MR. FREEMAN:  Okay.  What is the basis for your plan?
 5    What do you intend to do in this bankruptcy?
 6              MS. GUNKOVA:  I'm not sure.
 7              MR. FREEMAN:  All right.  How do you plan on funding
 8    the bankruptcy to pay the debts?
 9              MS. GUNKOVA:  I work Skin -- I work with my company,
10    and my company can pay me compensation so --
11              MR. FREEMAN:  So is it --
12              MS. GUNKOVA:  -- I have no problem to pay my bills.
13              MR. FREEMAN:  So is your answer, then, that it will be
14    your regular wage income --
15              MS. GUNKOVA:  Yes.
16              MR. FREEMAN:  -- from Skin Logic is how you plan on
17    funding your plan?
18              MS. GUNKOVA:  That is correct.
```

16

The U.S. Trustee has been unable to ascertain the Debtor's true income. Upon his review of the Debtor's TD Bank Account ending in -3121, the U.S. Trustee contends upon information and belief that, in the year leading up to the Debtor's Initial Petition, the Debtor received at least $43,000 from two Skin Logic bank accounts: a TD Bank Account ending in -6848 and a TD Bank Account ending in -4752.

Here, the Debtor has exhibited reckless indifference to the truth by consistently providing conflicting information regarding her income, to the tune of five different sets of schedules and countless instances of conflicting testimony while the Debtor was under oath during the 341 meetings. The Debtor's testimony in her Answer—that she did not consider Skin Logic paying her expenses "income"—is a non-explanation with regards to the numerous omissions of family support income and ever-conflicting salary information. *See* Adv. Docket No. 4 at 5.

In addition, the Debtor's false oaths regarding her income are material because her income clearly bears a relationship to the existence and disposition of her property.

For these reasons, summary judgment is warranted on Count II of the Acting United States Trustee's complaint under Section 727(a)(4) of the Bankruptcy Code.

Wherefore, the Acting United States Trustee moves the Court to grant summary judgment on Counts I and II of the U.S. Trustee's complaint and deny the Debtor's discharge.

Dated: February 5, 2025

Matthew W. Cheney
Acting United States Trustee, Region Four

*/s/ Katharine Toledo*
Katharine Toledo, D.C. Bar No. 90027591
Trial Attorney
Office of United States Trustee
1725 Duke Street, Suite 650
Alexandria, VA 22314
(202) 603-5203 (Office Cell)
Email: katharine.i.toledo@usdoj.gov

## **CERTIFICATE OF SERVICE**

    I hereby certify that on February 5, 2025, a true and correct copy of said document was served by electronic mail and first class United States mail, postage prepaid to the following:

Valeria V. Gunkova
20701 Riptide Sq.
Sterling, VA 20165
valeria@ariamedispa.com


                                            */s/ Robert W. Ours*
                                            Robert W. Ours
                                            Paralegal Specialist