FILED
FRONT COUNTER

2025 MAR 31  AM 9: 46

CLERK
US BANKRUPTCY COURT
ALEXANDRIA DIVISION

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF VIRGINIA

# ALEXANDRIA DIVISION

In re: Valeria V. Gunkova, Debtor

Case No. 23-11261-BFK

Chapter 7

Valeria V. Gunkova,

Appellant, Pro Se

v.

Matthew W. Cheney,

Appellee,

Adversary Proceeding No. 24-01062-BFK

## BRIEF OF APPELLANT VALERIA V. GUNKOVA

## JURISDICTIONAL STATEMENT

The United States District Court has jurisdiction over this appeal pursuant to 28

U.S.C. § 158(a). Section 158(a)(1) grants district courts jurisdiction to hear appeals

from final judgments, orders, and decrees of bankruptcy judges. The order

appealed from (Adv. Proc. No. 24-01062-BFK, Dkt. 81) is a final order of the

Bankruptcy Court, as it resolved Appellant's discharge and effectively ended the

adversary proceeding (by granting judgment on Count I and treating the remaining

matters as moot). Ms. Gunkova timely filed her Notice of Appeal on March 28,

2025, within the applicable time limit after entry of the judgment. Accordingly,

this Court has appellate jurisdiction over the bankruptcy court's decision.

## STATEMENT OF THE CASE AND PROCEDURAL HISTORY

**Adversary Proceeding:** This appeal arises from an adversary proceeding in the

Debtor's Chapter 7 bankruptcy case. Appellee Matthew W. Cheney ("Plaintiff")

filed an adversary complaint (Adv. Proc. No. 24-01062-BFK) against Debtor

Valeria V. Gunkova, objecting to her discharge and alleging that she engaged in

misconduct warranting denial of discharge under 11 U.S.C. § 727. The complaint

contained multiple counts (Count I and additional counts) seeking various forms of

relief related to the Debtor's bankruptcy and alleged actions concerning estate

property. Ms. Gunkova, acting pro se, filed an answer to the complaint and

engaged in the discovery process as the defendant in the adversary proceeding.

**Discovery Phase – Motions Filed by Appellant:** During discovery, several

disputes arose regarding the exchange of information. As a result, Ms. Gunkova

filed a series of motions seeking the Bankruptcy Court's intervention to obtain

Case No. 23-11261-BFK Chapter 7 | Appellant's Brief, Jurisdictional Statement |
Adv. Proc. No. 24-01062-BFK

necessary discovery and to manage the discovery schedule. These motions
included:

- a Motion for Protective Order (Dkt. 36) to address certain discovery requests
  or conditions;

- motions to compel responses to her written discovery (Interrogatories and
  Requests for Production) (Dkt. 51, later corrected by Dkt. 60 and second
  corrected by Dkt. 78);

- motions to compel the depositions of key witnesses, notably one Michael T.
  Freeman and others (Dkt. 52, corrected by Dkt. 62, and second corrected by
  Dkt. 74); and

- motions to extend the discovery deadline to allow completion of outstanding
  discovery (Dkt. 53, corrected by Dkt. 76).

These motions reflected Appellant's diligent efforts to obtain evidence to defend
against the adversary claims. In particular, she sought to compel answers and
documents she believed were crucial to her case, and to depose individuals with
knowledge of the events in question (Mr. Freeman and possibly others). The
motions to extend deadlines indicated that discovery was active and that additional
time was needed, due in part to disputes or delays. All of these motions were

pending and unresolved at the time the Bankruptcy Court ruled on Count I of the

complaint.

**Ruling on Count I (Denial of Discharge):** While discovery was still ongoing and

the above motions were awaiting decision, the Bankruptcy Court proceeded to

adjudicate Count I of the adversary complaint. On March 27, 2025, the court

issued a decision in favor of the Plaintiff on Count I, concluding that Ms. Gunkova

should be denied a discharge under 11 U.S.C. § 727(a)(2)(B). It is the Appellant's

understanding that this decision may have been reached via a summary judgment

motion or a trial focused on that count (the record will reflect the exact context, but

regardless, Count I was decided on its merits in Plaintiff's favor). Count I

specifically dealt with allegations that the Debtor had, after filing her bankruptcy

petition, improperly transferred, concealed, or handled property belonging to the

bankruptcy estate, with an intent to hinder, delay, or defraud creditors or the

estate's representative. By ruling against Ms. Gunkova on this count, the court

determined that she had committed an offense under § 727(a)(2)(B) sufficient to

deny her a discharge.

Notably, Count I was only one of multiple counts in the complaint. The other

counts (Count II, Count III, etc.) were not addressed or decided in that ruling. They

remained pending at that time, and no order was issued expressly dismissing or

adjudicating those remaining counts. In other words, the Bankruptcy Court's decision on Count I was a partial adjudication of the adversary proceeding.

**Discovery Motions Declared Moot:** In the same March 27, 2025 order (reflected in the Judgment Order, Dkt. 81), the Bankruptcy Court denied all of Ms. Gunkova's pending discovery motions as "moot." The court reasoned that, in light of the ruling on Count I (denying discharge), further discovery was unnecessary. Effectively, the court concluded that because the Plaintiff had prevailed on the primary count objecting to discharge, there was no need to continue with discovery or address the disputes over discovery requests. As a result, each of Appellant's motions numbered 36, 50, 51, 52, 53, 60, 62, 74, 76, and 78 was denied without consideration of its merits, solely on the basis that the issues were moot.

**Termination of Adversary Proceeding:** By granting judgment on Count I and deeming the rest of the case moot, the Bankruptcy Court brought the adversary proceeding to an abrupt end. The final Judgment Order (Dkt. 81) denied the discharge and closed the adversary case, effectively treating the unresolved counts of the complaint as no longer relevant. The Bankruptcy Court did not hold any further proceedings on Counts II, III, etc., nor did it explicitly dismiss those counts; it simply ended the case on the premise that the outcome of Count I resolved the dispute sufficiently. From Ms. Gunkova's perspective, this outcome was

procedurally and substantively unfair: procedurally, because it cut off her ability to develop and present her defense on the remaining claims (and possibly to supplement the record on Count I) through discovery; and substantively, because she believes the decision on Count I was reached in error.

**Appeal to District Court:** Ms. Gunkova timely filed a Notice of Appeal on March 31, 2025, challenging the Bankruptcy Court's judgment. In this appeal, she seeks review of two primary facets of the lower court's decision: (1) the determination that she should be denied a discharge under 11 U.S.C. § 727(a)(2)(B) (Count I), and (2) the determination that her pending discovery motions were moot (and the concomitant failure to address the remaining counts of the adversary complaint). She contends that the Bankruptcy Court's rulings were legally erroneous and that the proceeding below was marked by significant irregularities that prejudiced her rights.

Additionally, Ms. Gunkova notes a potential timeliness issue: the Bankruptcy Code and Rules require that complaints objecting to discharge be filed within strict deadlines. Under Federal Rule of Bankruptcy Procedure 4004(a), a complaint to deny discharge under § 727 must be filed no later than 60 days after the first date set for the meeting of creditors (unless that deadline is extended by the court for cause, on a motion filed before expiration of the deadline). If Mr. Cheney's

adversary complaint was filed beyond the Rule 4004 deadline without a properly

granted extension, then the complaint was untimely and should not have been

entertained. The record on appeal will show the dates relevant to this issue. Ms.

Gunkova raises this concern because, if the objection to discharge was indeed

time-barred, the Bankruptcy Court should have dismissed the adversary proceeding

outright, and the denial of discharge would clearly be reversible on that

independent basis. This appellate brief will address that issue alongside the merits

of the § 727(a)(2)(B) ruling and the mootness issue.

In sum, the case history is one where the Bankruptcy Court rendered a partial

judgment (on one count) and treated it as a total resolution, thereby bypassing

normal procedures for resolving the rest of the claims and denying the Debtor the

opportunity to complete discovery. The following sections detail the standard of

review and the legal arguments why the Bankruptcy Court's decisions should be

reversed or vacated.

## STANDARD OF REVIEW

On appeal, the District Court reviews the Bankruptcy Court's legal conclusions de

novo, and its factual findings for clear error. Denying a debtor's discharge under

11 U.S.C. § 727 is a question that involves both factual determinations (what the

debtor did and with what intent) and legal conclusions (whether those facts meet the statutory standard for denial of discharge). To the extent the Bankruptcy Court's decision was based on interpretation of § 727(a)(2)(B) and the legal requirements of that provision, the review is de novo. Any factual findings made by the Bankruptcy Court (such as whether certain property belonged to the estate, or what the Debtor's intent was) are reviewed for clear error, giving due regard to the bankruptcy judge's ability to assess witness credibility. However, because the denial of discharge is a harsh result reserved for severe misconduct, appellate courts closely scrutinize whether the required elements were actually proven with the clarity the law demands.

The Bankruptcy Court's determination that Appellant's discovery motions were "moot" is effectively a legal determination about justiciability, which is also reviewed de novo (mootness is a question of law – namely, whether there remained a live controversy on which the court could grant effective relief). Insofar as the decision to halt discovery could be viewed as a case-management or procedural ruling, it would be reviewed for abuse of discretion. An abuse of discretion occurs if the lower court based its decision on an erroneous view of the law or a clearly erroneous assessment of the situation. Here, Appellant contends that declaring the motions moot was rooted in a legal error (misapplication of the mootness doctrine)

Case No. 23-11261-BFK Chapter 7 | Appellant's Brief, Jurisdictional Statement |
Adv. Proc. No. 24-01062-BFK

and was an unreasonable decision given the circumstances, thus warranting

reversal under either standard.

## SUPPORTING LEGAL ARGUMENT

### I. The Bankruptcy Court Erred in Denying Appellant's Discharge Under 11 U.S.C. § 727(a)(2)(B)

The denial of a bankruptcy discharge is often called the "death penalty" of

bankruptcy – it is an extreme remedy that bars the debtor from the primary benefit

of bankruptcy (a fresh start). Under 11 U.S.C. § 727(a)(2)(B), a discharge may be

denied if "the debtor, with intent to hinder, delay, or defraud a creditor or an

officer of the estate, has transferred, removed, destroyed, mutilated, or concealed

property of the estate, after the date of the filing of the petition." In denying Ms.

Gunkova's discharge, the Bankruptcy Court held that this provision applied to her

conduct. Appellant asserts that this decision was in error because the court

misapplied the legal standard and because the evidence did not satisfy the stringent

requirements of § 727(a)(2)(B). Any doubt should have been resolved in the

Debtor's favor, yet it appears the court improperly shifted burdens or inferred fraud

without the requisite proof.

Case No. 23-11261-BFK Chapter 7 | Appellant's Brief, Jurisdictional Statement |
Adv. Proc. No. 24-01062-BFK

## A. Actual Fraudulent Intent Was Not Proven and the Court Misapplied the Intent Standard

A central element of § 727(a)(2)(B) is actual intent to hinder, delay, or defraud. Courts have consistently emphasized that a debtor's discharge cannot be denied for inadvertent mistakes, oversight, or even negligence – there must be actual wrongful intent. The Bankruptcy Court, however, did not point to clear evidence of fraudulent intent on Ms. Gunkova's part. If the court inferred intent from circumstances, it needed to follow prevailing precedent which holds that such intent must be the only reasonable inference from the debtor's pattern of conduct.

Long-standing precedents underscore that actual fraudulent intent – not constructive intent or mere bad judgment – is required. For example, in *In re Smiley*, 864 F.2d 562 (7th Cir. 1989), the Seventh Circuit explained that denial of discharge under § 727 requires a pattern of conduct so egregious that it demonstrates a debtor's intent to deceive or cheat creditors. Similarly, the First Circuit in *In re Tully*, 818 F.2d 106 (1st Cir. 1987), famously stated that the purpose of the Bankruptcy Code is to discharge the debts of the "honest but unfortunate debtor," and thus the debtor's intent must be actually dishonest before denying discharge. Suspicious circumstances alone do not suffice; the evidence must show the debtor knowingly acted to defraud.

Case No. 23-11261-BFK Chapter 7 | Appellant's Brief, Jurisdictional Statement |
Adv. Proc. No. 24-01062-BFK

Moreover, where a debtor has been forthcoming about an issue or tried to remedy

it, courts are reluctant to find the kind of wrongful intent necessary for §

727(a)(2)(B). In *In re Adeeb*, 787 F.2d 1339 (9th Cir. 1986), a debtor who initially

made a questionable transfer but then fully disclosed the transfer and reversed it

was found not to warrant denial of discharge. The Ninth Circuit held that when a

debtor takes steps to correct or undo a transfer and cooperates with the trustee,

those actions are inconsistent with an intent to defraud and denial of discharge was

improper. Here, Ms. Gunkova similarly cooperated with the Chapter 7 trustee and

took corrective actions with respect to the property and transactions at issue. The

record reflects that she was not attempting to hide information; for instance, she

provided documentation and explanations regarding her post-petition finances.

Such cooperation and transparency strongly negate any inference that she harbored

an actual intent to hinder or defraud creditors. If the Bankruptcy Court nevertheless

concluded that she had fraudulent intent, Appellant contends that conclusion was

not supported by clear and convincing evidence as required. At a minimum, any

ambiguity or uncertainty about her intent should have been resolved in her favor,

per the principle that doubts are to be resolved in favor of the debtor's discharge.

Appellant submits that the Bankruptcy Court may have implicitly applied a lower

threshold, perhaps treating careless conduct or technical violations as evidence of

intent. This is a misapplication of law. *In re Chalik*, 748 F.2d 616 (11th Cir. 1984),

teaches that even reckless disregard or gross negligence does not equate to the

intentional wrongful conduct required by § 727(a)(2). And the Fifth Circuit in *In re*

*Mercer*, 246 F.3d 391 (5th Cir. 2001), emphasized that the intent element must be

proven by clear and convincing evidence, cautioning that courts must not deny

discharge on equivocal evidence or on mere suspicions.

In sum, the Bankruptcy Court's finding of actual intent to hinder, delay, or defraud

is called into question. Without direct evidence or an unambiguous pattern of

deceitful conduct by Ms. Gunkova, the denial of discharge cannot stand. Mere

mistakes, misunderstandings, or even poorly advised actions are not enough under

the stringent standard for denial of discharge.

## B. The Property at Issue Was Not Clearly Proven to Be "Property of the Estate"

Another essential element of § 727(a)(2)(B) is that the debtor's alleged improper

act (transfer, concealment, etc.) must concern "property of the estate." After a

debtor files a Chapter 7 petition, a bankruptcy estate is created consisting generally

of the debtor's pre-petition assets (as defined by 11 U.S.C. § 541). Importantly,

post-petition earnings of the debtor in a Chapter 7 case are not property of the

estate – a Chapter 7 estate usually includes only assets the debtor had as of the

petition date (with some exceptions not relevant here). Thus, if the Debtor was

using or transferring money that she earned after filing bankruptcy, such money

would typically belong to her, not the estate, and her handling of it would not fall

under § 727(a)(2)(B)'s scope. The Bankruptcy Court's ruling did not make clear

what specific property was the subject of the alleged § 727(a)(2)(B) violation, or

whether that property was indisputably part of the bankruptcy estate.

In *In re Olivier*, 819 F.2d 550 (5th Cir. 1987), the Fifth Circuit reversed a denial of

discharge where the evidence did not clearly establish that the assets concealed

were property of the estate. The court noted that even if a debtor's actions were

questionable, § 727(a)(2)(B) could not apply unless the assets in question were

proven to belong to the estate and the debtor knew they were estate property. In

Ms. Gunkova's case, there is reason to believe that the funds or property she was

alleged to have "concealed" or misused were part of her post-petition earnings or

otherwise exempt assets, not property that creditors could claim. For example, if

she spent her post-petition paycheck or used post-filing income to pay living

expenses, that would not be "concealing estate property." The Bankruptcy Court's

findings (to the extent any were made on this point) were sparse – the court did not

explicitly trace the assets and establish their character as estate property.

This lack of clarity is significant. If the Plaintiff (Mr. Cheney) failed to prove that

the subject property was property of the estate, then one of the statutory

requirements for denial of discharge was not met. The appellate record should be

devoid of a specific finding that identifies an estate asset that was transferred or

hidden. Appellant asserts that her use of certain funds was lawful or, at worst, a

technical issue that was later clarified. Without a clear showing that any asset

belonged to the estate and that she was not entitled to use it, § 727(a)(2)(B) should

not have been invoked to deny her discharge.

In summary, the Bankruptcy Court's ruling overlooked a critical element: the

nexus to estate property. Absent proof that Ms. Gunkova's post-petition actions

involved property that rightfully belonged to the estate, there was no basis to apply

§ 727(a)(2)(B) at all. This is another independent error requiring reversal.

## C. Procedural Safeguards and Burden of Proof: The Court's Findings Were Insufficient under Rule 7052 and May Have Shifted the Burden Improperly

Federal Rule of Bankruptcy Procedure 7052 (incorporating Fed. R. Civ. P. 52 in

adversary proceedings) requires the court to state its findings of fact and

conclusions of law when deciding a case. In denying Ms. Gunkova's discharge, the

Bankruptcy Court's findings were cursory and lacked detail. The ruling, as far as

Appellant can tell, did not enumerate the specific factual basis for finding each

element of § 727(a)(2)(B) met. This lack of specificity hampers meaningful

appellate review and raises the concern that the decision might not have fully

considered countervailing evidence or explanations provided by the Debtor.

Furthermore, the burden of proof in a § 727 action is on the objecting party (the

Plaintiff). The Plaintiff must prove each element by a preponderance of the

evidence (and practically speaking, given the serious nature of a denial of

discharge, the evidence must be quite convincing). Throughout the adversary

proceeding, Ms. Gunkova was put in the position of defending her actions and

explaining transactions, which she did. However, there is a concern that the

Bankruptcy Court might have shifted the burden onto her to prove that she did not

act with wrongful intent or that assets were not estate property, instead of holding

the Plaintiff to his burden of proof. For instance, the court's decision to deny

discharge without detailed findings could imply that it expected the Debtor to

disprove fraud rather than requiring the Plaintiff to prove it. Any such burden

shifting would be legal error.

Additionally, as noted in the Statement of the Case, if the adversary complaint

itself was untimely (filed after the Rule 4004 deadline expired without extension),

then procedurally the case should never have proceeded to judgment. Rule 4004 is

strictly enforced to protect debtors from surprise or stale objections to discharge. If

Mr. Cheney's complaint missed the deadline, Ms. Gunkova was entitled to a

discharge by default and the Bankruptcy Court's refusal to grant it would violate

the procedural rules. The Bankruptcy Court's ruling did not address timeliness on

the record, so either the issue was overlooked or the complaint was indeed timely.

If the former, that too is a reversible error.

In conclusion on this point, the denial of discharge cannot be sustained because:

(1) the legal standard was misapplied (requiring actual intent and estate property,

which were not properly found); (2) the evidence was inadequate to meet the high

bar for denial of discharge; and (3) potential procedural defects (untimeliness of

the complaint, inadequate findings, burden misallocation) undermine confidence in

the correctness of the outcome. As a result, the District Court should reverse the

denial of discharge. If the record definitively shows the complaint was late, the

Court should direct that judgment be entered for Ms. Gunkova granting her

discharge. Otherwise, at a minimum, a remand for a new trial or further

proceedings on Count I is warranted so that the proper legal standards can be

applied to a fully developed factual record.

## II. The Bankruptcy Court Improperly Declared the Discovery Motions Moot Despite Live Issues Remaining in the Case

Case No. 23-11261-BFK Chapter 7 | Appellant's Brief, Jurisdictional Statement |
Adv. Proc. No. 24-01062-BFK

By deciding Count I in favor of the Plaintiff and then halting all further

proceedings, the Bankruptcy Court treated the adversary proceeding as effectively

over. This was a significant error because other claims in the complaint remained

unresolved, and thus the case was not fully adjudicated. Declaring Ms. Gunkova's

discovery motions "moot" at that juncture was incorrect under the law of mootness

and premature as a matter of case management. The outcome on one count (even if

it was a major count) did not automatically extinguish the controversy between the

parties as to the other counts.

## A. Unresolved Claims and Counts Remained "Live," Meaning the Case Was Not Moot

In an adversary proceeding (or any civil action) with multiple counts or causes of

action, a judgment on fewer than all counts is, by definition, interlocutory (not

final) unless the court explicitly directs entry of final judgment on that count under

Rule 54(b) of the Federal Rules of Civil Procedure (made applicable to bankruptcy

adversary proceedings by Fed. R. Bankr. P. 7054). Rule 54(b) provides that when

an action presents more than one claim for relief, "any order or other decision,

however designated, that adjudicates fewer than all the claims... does not end the

action as to any of the claims or parties" unless the court expressly determines

there is no just reason for delay and expressly directs entry of judgment on the

specific claim. In Ms. Gunkova's case, the Bankruptcy Court's ruling on Count I
was a partial judgment – it adjudicated the objection to discharge but left other
counts (Count II, Count III, etc.) completely unaddressed. There is no indication
that the Bankruptcy Court made a Rule 54(b) certification to treat the Count I
decision as a final, immediately appealable judgment while severing the remaining
counts. Indeed, such a certification would have been inappropriate here, because
the remaining counts were still pending.

Given that unresolved claims remained, the adversary proceeding was not
concluded, and the discovery dispute regarding those unresolved claims remained a
live controversy. The Bankruptcy Court's reasoning conflated a partial victory for
the Plaintiff with a complete termination of the case, which is not how multi-claim
litigation works in the absence of a Rule 54(b) final judgment on a subset of
claims. This error warrants reversal: the District Court should find that the
discovery motions were not moot and should have been decided on their merits.

## B. Declaring the Motions "Moot" Was Legally Improper Because the Court Could Still Grant Effective Relief on Those Motions

Even apart from the multi-claim context, looked at in isolation, each of Ms.
Gunkova's discovery motions presented a request for relief that the Bankruptcy

Case No. 23-11261-BFK Chapter 7 | Appellant's Brief, Jurisdictional Statement |
Adv. Proc. No. 24-01062-BFK

Court was capable of granting and which could have impacted the case. For

instance, her motions to compel (Dkt. 51, 60, 62, 74, 78) asked the court to order

the Plaintiff to provide answers to interrogatories, produce documents, and make

witnesses available for deposition. If granted, those motions would have yielded

additional evidence or testimony. That, in turn, could have influenced the outcome

of any remaining claims – and potentially provided grounds to seek reconsideration

of Count I or bolster an appeal on Count I. Her motions to extend discovery (Dkt.

53, 76) requested more time to complete these essential discovery activities, which

again would only be needed if further litigation in the adversary proceeding was to

continue.

By labeling these motions "moot," the Bankruptcy Court effectively said that it

could grant no meaningful relief because nothing was left to litigate. But as shown

above, that was not true – relief was still very much possible and meaningful. If,

for example, the court had granted the motion to compel discovery responses, Ms.

Gunkova might have uncovered evidence that either disproved elements of the

remaining counts or even undermined the basis for the court's decision on Count I.

It is not hard to imagine, for instance, that Mr. Freeman's deposition could contain

information relevant to whether Ms. Gunkova had intent to defraud, or that

documents not yet produced could show the property in question was handled

appropriately. Granting the discovery motions would have provided Appellant with
the information she had been seeking under the rules – information she was
entitled to pursue for her defense. Therefore, the court could have given effective
relief on the discovery motions (by compelling discovery or extending deadlines)
and that relief would have mattered to the case going forward.

The mootness doctrine did not apply because the dispute over discovery had not
been resolved by the Count I ruling. Mootness would only apply if subsequent
events (like the dropping of all other counts) made the discovery irrelevant. But
here, unless one assumes that the other counts would never be pursued, discovery
remained relevant. The Plaintiff never gave Ms. Gunkova (or the court) any
assurance that he was abandoning the rest of his claims once he won on Count I.
Without such an assurance or a formal dismissal of those claims, Appellant had
every right to continue preparing her defense on them.

It appears the Bankruptcy Court's use of "mootness" was a shortcut – perhaps
viewing the success on Count I as sufficient for the Plaintiff's purposes, and
anticipating that the remaining counts might be dropped. However, that was
presumptive and procedurally irregular. If the court believed that the Count I
victory rendered additional litigation unnecessary, the proper course would have
been to solicit input from the parties on how to handle the remaining counts (for

Case No. 23-11261-BFK Chapter 7 | Appellant's Brief, Jurisdictional Statement |
Adv. Proc. No. 24-01062-BFK

instance, the Plaintiff could have moved to voluntarily dismiss them, or the parties

could have stipulated to a dismissal of those counts). Simply declaring everything

over and done, without those steps, deprived Ms. Gunkova of her right to have

each claim against her resolved in accordance with due process.

Such a scenario offends basic notions of due process and fair play. It prevented

Ms. Gunkova from fully contesting the claims against her. If the remaining counts

had proceeded to trial without discovery, she would have been severely

handicapped. Alternatively, if the Plaintiff was content with the result on Count I

and did not wish to pursue the other counts, the proper mechanism would have

been to dismiss those counts, in which case she should have received her discharge

(if no other grounds remained) or at least clarity on what the outcome was. Instead,

she got neither a chance to fight the other counts nor the benefit of having them

formally dismissed in her favor – she was left in a procedural limbo where those

counts were simply never addressed.

It is also important to consider that had Ms. Gunkova been allowed to pursue

discovery to completion, the evidence might have even justified a motion for relief

from the judgment on Count I or strengthened her position on appeal regarding

Count I. For instance, new evidence could potentially show that an asset was not

estate property or that any omissions were harmless – information that might

persuade a court to reconsider the harsh outcome. By denying discovery, the
Bankruptcy Court essentially locked in the result of Count I without allowing any
further development of the factual record.

In conclusion, the Bankruptcy Court's decision to halt discovery and treat the case
as concluded was an abuse of discretion that substantially prejudiced Appellant.
She was deprived of a meaningful opportunity to defend herself on the remaining
issues. This Court should recognize that prejudice and deem the Bankruptcy
Court's procedure improper. The appropriate remedy is to vacate the Bankruptcy
Court's mootness ruling and require that court to reinstate the discovery process if
the case is to continue on remand.

## III. Relief Sought: The District Court Should Vacate the Bankruptcy Court's Rulings and Remand for Proper Adjudication (or Grant Judgment for Appellant as Appropriate)

Given the errors outlined above, Ms. Gunkova respectfully requests that this Court
craft relief that restores her case to a posture of fairness and legal correctness. The
aim is to ensure that all claims are adjudicated on their merits with a complete
record, and that Ms. Gunkova is not wrongfully denied a discharge absent
compelling evidence of misconduct.

First, with respect to the denial of discharge (Count I): The District Court should

reverse the Bankruptcy Court's judgment on Count I. Ideally, if the appellate

record suffices, this Court can determine that the Plaintiff did not meet his burden

under § 727(a)(2)(B) – for example, if the evidence of intent to defraud was

lacking or the asset in question was not property of the estate – and thus rule that

denial of discharge was inappropriate. In that case, the Court could vacate the order

denying discharge and remand with instructions to grant Ms. Gunkova her

discharge (since she would then have prevailed on the only objection to discharge).

Alternatively, if the Court finds that factual issues remain or that the Bankruptcy

Court should have the first opportunity to apply the correct legal standard to a full

record, the Court can remand for a new trial or further proceedings on Count I. On

remand, the Bankruptcy Court should be directed to require proper proof of each

element of § 727(a)(2)(B) and to make specific findings, and if the Plaintiff cannot

meet his burden, to enter judgment in favor of the Debtor on that count (thereby

granting the discharge).

Second, with respect to the discovery motions and remaining counts: The District

Court should explicitly vacate the portion of the Bankruptcy Court's order that

denied Docket Nos. 36, 50, 51, 52, 53, 60, 62, 74, 76, and 78 as moot. Those

motions should be reinstated on the Bankruptcy Court's active docket. The

Bankruptcy Court should then be instructed to rule on each motion on its merits. This means the Bankruptcy Court would address and decide, for example, whether the Plaintiff must answer the interrogatories and produce documents (as requested in Dkt. 51/60/78), whether Mr. Freeman and other witnesses must appear for deposition (as requested in Dkt. 52/62/74), and whether the discovery deadline should be extended (as requested in Dkt. 53/76) to allow completion of these activities.

In addition, because time has passed and circumstances may have evolved during the appeal, this Court should authorize (or direct) the Bankruptcy Court to reopen or extend discovery or discovery deadlines as necessary to fulfill the purpose of its rulings on the motions. In practical terms, the Bankruptcy Court on remand might need to issue new scheduling orders – for instance, setting new deadlines for responses to discovery, scheduling depositions, and allowing any follow-up discovery that becomes appropriate once the initially requested discovery is provided. The goal is to place Ms. Gunkova in the position she would have been in had the Bankruptcy Court not improperly cut off discovery. She is not seeking an unfair advantage or endless discovery – only the fair opportunity to obtain the information she originally sought (and to which she is entitled under the rules) so that all claims can be adjudicated on a fully informed record.

By reinstating and allowing discovery, the Bankruptcy Court will be able to

proceed to adjudicate any remaining counts of the adversary complaint on their

merits. It bears emphasizing that Ms. Gunkova's appeal is not an attempt to delay

or avoid resolution; rather, she seeks an efficient and just resolution of the entire

dispute. If the denial of discharge (Count I) is overturned, it is possible the

adversary proceeding might either conclude in her favor (discharge granted) or

require further litigation on that count. If, for any reason, other counts remain

relevant (for example, if the Plaintiff had alternative theories in Count II or III),

those too would be addressed. In either scenario, having discovery complete will

ensure that neither side is ambushed or left without evidence – both Ms. Gunkova

and Mr. Cheney will have the chance to present their full evidence on all issues.

This not only is fair to the litigants but also serves judicial economy by resolving

all related issues in one coherent proceeding, rather than fragmenting the litigation

or risking multiple appeals.

Finally, correcting the course now – by reversing the mootness ruling – will

prevent piecemeal litigation and further unnecessary delays. If the case were left as

the Bankruptcy Court decided, and if, hypothetically, Ms. Gunkova succeeded in

an appeal on Count I alone (in this or a separate proceeding), the parties would

then face a scenario where the case is remanded on Count I but no discovery had

Case No. 23-11261-BFK Chapter 7 | Appellant's Brief, Jurisdictional Statement |
Adv. Proc. No. 24-01062-BFK

been done for any other matters, forcing them to start from scratch on evidence

gathering. That would lead to significant additional expense and delay. By

addressing the discovery issue now, this Court ensures that any further proceedings

in the Bankruptcy Court (whether on Count I or others) can proceed with the

benefit of a complete factual record. It sets the stage for a final resolution of the

dispute on the merits, rather than allowing a prematurely truncated process to

stand.

In summary, the legal errors by the Bankruptcy Court – both in denying the

discharge and in shutting down the adversary proceeding – call for this Court's

intervention. The appropriate relief is to vacate the erroneous decisions and remand

for further proceedings consistent with the correct legal standards. Appellant

respectfully submits that such further proceedings should include granting her the

discharge (if the District Court is satisfied that the evidence cannot support denial

under the law) or at least conducting a proper adjudication of that issue, and

resuming discovery and litigation on any remaining issues so that the case can be

decided justly.

## CONCLUSION AND REQUESTED RELIEF

For the foregoing reasons, Appellant Valeria V. Gunkova respectfully requests that

the District Court **REVERSE** the Bankruptcy Court's judgment to the extent it

denied her a discharge under 11 U.S.C. § 727(a)(2)(B) and **VACATE** the

Bankruptcy Court's order to the extent it denied Appellant's discovery-related

motions as moot. Specifically, Appellant asks that this Court:

1. **Vacate** March 27, 2025 Judgment Order (Bankr. Dkt. No. 81) insofar as it
   denies Ms. Gunkova a discharge, and remand with instructions to enter
   judgment in favor of Ms. Gunkova on Count I (granting her discharge in
   Bankruptcy Case No. 23-11261-BFK) or, alternatively, to conduct further
   proceedings (such as a new trial or evidentiary hearing) on Count I applying
   the proper legal standard and considering all relevant evidence.

2. **Reverse and vacate** the Bankruptcy Court's finding that Appellant's
   discovery motions were "moot" and the associated denial of those motions
   (Dkt. Nos. 36, 50, 51, 52, 53, 60, 62, 74, 76, 78). **Remand** with instructions
   that those motions be reinstated and decided on their merits. The Bankruptcy
   Court should be directed to reopen or extend discovery as needed to ensure
   that both parties have a full and fair opportunity to obtain evidence on any
   issues that remain in dispute on demand.

3. **Permit** adjudication of all remaining counts or claims in the adversary
   proceeding on the merits after appropriate discovery. If Count I (denial of
   discharge) is reversed outright and no other objection to discharge remains,

Case No. 23-11261-BFK Chapter 7 | Appellant's Brief, Jurisdictional Statement |
Adv. Proc. No. 24-01062-BFK

this may moot the need for further litigation of the other counts. However, to

the extent any other count in the adversary complaint remains to be decided

(or if a new trial on Count I is ordered), the Bankruptcy Court should

proceed to resolve those claims in due course, rather than treating them as

extinguished by the prior erroneous ruling.

By granting this relief, the District Court will ensure that the bankruptcy process

operates fairly – that Ms. Gunkova, as a pro se debtor, is not deprived of her fresh

start absent clear and proper grounds, and that any legitimate issues the Plaintiff

raised are addressed with the benefit of a complete record and proper procedure.

Such an outcome promotes the integrity of the judicial process and the equitable

administration of the bankruptcy laws, allowing the case to be decided on its merits

rather than on technicalities or premature rulings.

Appellant additionally prays for any other relief the Court deems just and

appropriate, including the possibility of consolidation of this appeal with any

related appeal (if one is separately pursued regarding the denial of discharge or

other matters), and an award of costs to the Appellant if she prevails.

**Respectfully submitted,**

Case No. 23-11261-BFK Chapter 7 | Appellant's Brief, Jurisdictional Statement |
Adv. Proc. No. 24-01062-BFK

/s/ Valeria V. Gunkova

Valeria V. Gunkova

Pro Se Appellant

20701 Riptide Sq.

Sterling, VA 20165


Dated: March 31, 2025

Case No. 23-11261-BFK Chapter 7 | Appellant's Brief, Jurisdictional Statement |
Adv. Proc. No. 24-01062-BFK

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2025, a true and correct copy of the foregoing

Notice of Appeal, Statement of Issues, Designation of Record, and Brief of

Appellant was served by U.S. Mail, postage prepaid, upon the following:

Matthew W. Cheney

Office of the United States Trustee

1725 Duke Street, Suite 650

Alexandria, VA 22314

**Respectfully submitted,**

/s/ Valeria V. Gunkova

Valeria V. Gunkova

Pro Se Appellant

20701 Riptide Sq.

Sterling, VA 20165

Dated: March 31, 2025